**DAVID J. HOLDSWORTH** (4052)

JEFF D. HOLDSWORTH (14679)

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| APRIL REX, | : | **FIRST AMENDED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FARMERS INSURANCE | : | |
| EXCHANGE, | : | Case No. |
| | : | |
| Defendant. | : | Hon. |

April Rex, Plaintiff herein, by and through her counsel of record, David J. Holdsworth, files this Verified Complaint against Farmers Insurance Exchange, named as Defendant herein, demands trial by jury, and as and for causes of action, alleges as follows:

### I.  PARTIES

1.      Plaintiff April Rex (hereinafter "Plaintiff" or "Ms. Rex") is a citizen of the United States and a resident of the State of Utah.

2.     The employer named as defendant herein is Farmers Insurance Exchange.  On information and belief, Plaintiff understands and, therefore, alleges that, although various papers she received during her employment at issue herein referred to Farmers Insurance Group, Inc., or Farmers Group, Inc., as her employer, her actual and true employer was Farmer's Insurance Exchange.  At all times relevant hereto, Farmers Insurance (hereinafter "Defendant" or "Farmers"), employed 15 or more employees in the State of Utah and was subject to Title VII of the Civil Rights Act of 1964, as amended.

## II.  JURISDICTION AND VENUE

3.     Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, for discrimination on the basis of religion, and for retaliation. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e-5.  Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332, and 1367.

4.     Plaintiff initiated the process to file a Charge of Discrimination with the EEOC on or about December 24, 2012, which was within 300 days from the last date of the alleged harm.  Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

5.     Venue is properly set in this Court, in that the employment facts, actions, events and decisions Plaintiff alleges herein occurred and the causes of action Plaintiff alleges herein arose in the federal district of Utah.

## III.  STATEMENT OF FACTS AND CLAIMS

### A.    STATEMENT OF FACTS

6.    Plaintiff is a member of the Church of Jesus Christ of Latter-day Saints (commonly known as the "LDS Church" or the "Mormon Church").

7.    This case tests the limits of religious expression in the workplace. It is axiomatic that an employer may be able to promulgate policies which control or even prohibit active religious proselyzation in the workplace.  It is also axiomatic that an employee may engage in some forms of religious expression in the workplace and than an employer may not be able to prohibit all forms of religious expression in the workplace.  This case falls somewhere in the middle.  Ms. Rex was not asking her supervisor to "cut her some slack" or "give her a break" with respect to her conduct or performance because they shared the same religious faith.  She was asking her supervisor to treat her in a way Ms. Rex believed their same religious faith encouraged people to treat other people, including fellow employees in the workplace.

8.    Plaintiff alleges that on January 4, 2005, Farmers hired her. During her employment with Farmers, Plaintiff worked in a variety of positions and assignments for Farmers.  At all times relevant hereto, Plaintiff was working as a Senior Property Representative (a claim representative) in Defendant's Salt Lake Valley office.

9.      Plaintiff alleges that she performed the duties of her job in a satisfactory manner.

10.      At all times relevant hereto, Ms. Rex was supervised by and reported to Tanya Fisher.  Ms. Rex alleges that she and Tanya Fisher ("Fisher") shared the same religious affiliation.  From time to time, Ms. Rex and Ms. Fisher would have friendly conversation about what each was doing in their respective church congregational units.

11.      Plaintiff alleges that, from time to time, Farmers subjected Ms. Rex to discrimination because of her religion in various ways, including, but not limited to, accusing Ms. Rex of failing to maintain a professional work environment, accusing Ms. Rex of not treating her customers with professional courtesy, accusing Ms. Rex of failing to be efficient and productive on the job and accusing Ms. Rex of making threats.  Plaintiff does not allege she was a perfect employee, but she does allege that she tried to do her job to the best of her ability and was generally productive and successful.

12.      From time to time, Ms. Fisher would criticize Ms. Rex for various situations or decisions or aspects of her performance.  Ms. Rex tried to respond constructively to such criticism by trying to work harder by trying to improve her relationships with customers, colleagues and Ms. Fisher.

4

13.     For example, in approximately early 2012, a contractor had missed a deadline to finish his restoration work on a residence, which had suffered various kinds of damage.  The contractor had sent a nasty e-mail to Ms. Fisher about Ms. Rex's supposed delays in working on the file.  Ms. Rex thought the contractor was trying to blame her for the contractor's own delays.  (Ms. Rex had put the customer up in a hotel since there was drywall work that needed to be completed on the customer's house and the customer had an infant.  The contractor didn't make the deadline to complete the work on the customer's house and, on his own, without letting Ms. Rex know, moved the customer from the hotel Ms. Rex had provided for the family to "his hotel."  About four months later, the contractor wrote a scathing e-mail to Ms. Rex expressing his anger.  Ms. Rex was concerned and had wanted to call the customer and make sure the customer was okay.)

14.     On one occasion, when Ms. Rex and Ms. Fisher were talking about the problem, Ms. Rex suggested that the two of them call the customer, explain the problem with the contractor's failure to meet the deadline and to offer possible solutions.  But Ms. Fisher declined this invitation to address the customer's concerns.

15.     On March 7, 2012, Ms. Rex met with Ms. Fisher in an assessment meeting to discuss the company's formal performance evaluation of Ms. Rex's performance during the 2011 calendar year.

16.     During the meeting, Ms. Fisher told Ms. Rex that she had met her goals for file quality and customer service, but had had some problems with her behavior and, thus, would not be receiving a raise in 2012.  During the meeting, Ms. Fisher brought up the claim Ms. Rex had handled referred to above where an attorney had eventually become involved.  (Ms. Fisher accused Ms. Rex, on record, regarding two claims—a fire claim and copper pipe theft.  The customer had hired an attorney and Ms. Fisher was blaming the hiring of an attorney on Ms. Rex.)  Ms. Rex did not feel it was right or fair for Ms. Fisher to blame her [Ms. Rex] for the contractor's delays in fixing the fire damage and sought to defend herself.  Ms. Fisher told Ms. Rex that she often "made excuses" and tried to place blame elsewhere.  Ms. Rex stated that such was not true and that Ms. Fisher knew what had happened in the claim at issue.

17.     Ms. Rex then asked to read the performance review Ms. Fisher was discussing with her.  Ms. Fisher allowed Ms. Rex to read the performance review and, as Ms. Rex did so, Ms. Rex raised her voice somewhat and Ms. Rex stated that she did not believe the performance review was accurate or that Ms. Fisher was treating her fairly.  Ms. Fisher explained that she was being told what to do and could not make any changes to the performance appraisal document.

18.     Ms. Rex then sensed that she needed to change the tone of the conversation.  In an effort to do so, Ms. Rex mentioned that she and Ms. Fisher shared

the same religious faith.  Ms. Rex discussed the LDS belief in being accountable for

one's own actions and the LDS belief that each individual would be accountable for

how each individual treated other people.  Ms. Fisher stated that she agreed with

everything Ms. Rex was saying.  Ms. Rex told Ms. Fisher the only thing she was asking

of her is that Ms. Fisher made sure she was being fair to Ms. Rex in evaluating her

performance and in her employment generally.  At some point, Ms. Rex may have

stated to Ms. Fisher something to the effect of: we would all have to stand before God

and be accountable before God for how we treated other people.  In the conversation,

Ms. Rex also made reference to a book which the LDS Church considers to be

"scripture."

19.     Apparently, Ms. Fisher perceived Ms. Rex's comments about

being accountable for how she treated other people, as some kind of a threat against her

and reported Ms. Rex's comment to her Territory/Field Claims Manager, Ace Grandy

and Albert "Al" Scaglione, the Branch Claims Office Manager.

20.     Later, Ms. Fisher came to Ms. Rex and told her that she wanted to

meet with her and the managers.  Ms. Rex advised that would be fine, but that she

wanted to "move on."

21.     The next day, March 8, 2012, Ms. Rex was summoned to a

meeting with Ms. Fisher, Mr. Grandy, the territory manager, and Al Scaglione, the

7

Branch Claims Office Manager.  Mr. Scaglione accused Ms. Rex of making threats against Ms. Fisher.  Ms. Rex denied making any threats and when Ms. Rex tried to recapitulate what had happened during the meeting with Ms. Fisher, and tried to explain that Ms. Fisher and Ms. Rex shared the same religious faith and that is why Ms. Rex had mentioned to Ms. Fisher that their common faith had a principle that all persons would be accountable before God for the way they treated their fellow man and so she just wanted Ms. Fisher to treat her fairly in the performance review and her employment, Mr. Scaglione cut her off.  Ms. Rex again tried to explain that she had made the comment to Ms. Fisher because she and Ms. Fisher shared the same religion, and would sometimes talk about faith related issues, and, therefore, she did not think Ms. Fisher would take offense at such a comment and that she had not meant it as any kind of a threat.  Again, Mr. Scaglione cut her off.  Ms. Rex denied saying anything that was incorrect or which was disrespectful to or offensive to Ms. Fisher.  Ms. Rex denied slamming her fists down or otherwise behaving inappropriately during the meeting. Ms. Rex apologized to Ms. Fisher for her raising her voice and making the religious based comment she made.  Ms. Rex stated again that she had not meant to offend Ms. Fisher and was sorry if she had.

22.     Plaintiff alleges that after she apologized, Farmers terminated her employment effective March 13, 2012.  When Ms. Rex asked why Farmers was terminating her employment, Farmers did not give her any reason.

23.     On or about September 8, 2012/December 24, 2012, Ms. Rex filed a Charge of Discrimination with the Utah Labor Commission and the U.S. Equal Employment Opportunity Commission in which she alleged that Defendant had discriminated against her based on her religion, and that after she had engaged in protected activity, Farmers had retaliated against her.

24.     On or about February 27, 2015, the EEOC issued Ms. Rex an Notice of Right to Sue.

25.     Ms. Rex received said Notice on approximately March 4th or 5th, 2015.

**B.     CLAIMS.**

**A.  Prima Facie Case of Discrimination—Religion**

26.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 25 above as if alleged in full herein.

27.     In order to establish a prima facie case of discrimination based on religion, Plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) her employer subjected her to one or more

adverse employment actions; and (4) the circumstances surrounding the adverse

action(s) give rise to an inference of discrimination on the basis of religion.

28.     Plaintiff is a practicing member of The Church of Jesus Chirst of

Latter-day Saints and, thus, she is a member of a protected class.

29.     Plaintiff alleges she is qualified for the position she held.  Farmers

had employed Plaintiff since 2005.  At the time of the events alleged herein, Plaintiff

was performing her job in a satisfactory manner.  Plaintiff does not allege she was a

perfect employee and never made mistakes, but is alleging she did not do or fail to do

anything which merited termination.

30.     Plaintiff alleges that, beginning in October 2010, her management

began to subject her to several adverse employment actions.

31.     Adverse employment action includes any significant change in

employment status, such as hiring, serious discipline, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.  *Piercy v. Makela,* 480 F.3d 1192, 1203 (10th Cir. 2007)

(quoting *Hillig v. Rumsfeld,* 381 F.3d 1028, 1032-33 (10th Cir. 2004)).

32.     Plaintiff alleges that, beginning in October 2010, Farmers began to

subject her to several materially adverse employment actions, including placing her on a

Performance Improvement Plan and taking formal disciplinary action against her.

10

33.     Such discipline resulted in significant changes in Ms. Rex's employment status, job security and job opportunities.

34.     Plaintiff alleges that such adverse action continued and escalated after December 2011 and constituted a continuing violation, which culminated in a termination.

35.     Plaintiff alleges that, in addition, on March 13, 2012, Farmers took adverse employment action against her when it terminated Ms. Rex's employment.

36.     Plaintiff alleges her supervisor and management treated her disparately because of her religion, and her religious expression, compared to how her supervisor treated her before she engaged in an overt religious expression and how her supervisor treated her compared to how her supervisor treated other similarly situated employees not of her religion.

37.     Plaintiff alleges her management took adverse action against her because of her religious activity in discussing certain principles of her faith with a supervisor with whom she shared the same religious affiliation faith.

38.     Thus, Plaintiff alleges the circumstances surrounding the adverse employment actions give rise to an inference of discrimination on the basis of religion.

39.     Plaintiff alleges Defendant's reasons for the adverse employment actions (whatever they were) would be pretextual in that, among other things,

Defendant did not provide a minimum of industrial due process in investigating the events of the March 7, 2012 meeting between Ms. Rex and Ms. Fisher and did not follow the usual and customary steps in its progressive disciplinary process.

**B.  Prima Facie Case of Retaliation**

40.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 39 above as if alleged in full herein.

41.    In order to establish a prima facie case of retaliation, Plaintiff must establish: (1) she engaged in protected activity; (2) Farmers subjected Plaintiff to an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action.

42.    A protected activity consists of: "opposing a practice made unlawful by one of the employment discrimination statutes; or filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under the applicable statute." *See* EEOC Compliance Manual, Sec. 8 (May 20, 1998).  Employee opposition to employer conduct is protected if it is based on a good faith belief that Title VII has been violated.

43.    Plaintiff alleges that she, in good faith, believed that her supervisor was treating her disparately and adversely because of her religion.  Plaintiff engaged in

protected activity at various times and in various ways such as when she complained to her supervisor about how the supervisor was treating her adversely and in expressing that such treatment was violative of their common religious faith in being honest and in treating others fairly.

44. Thus, Plaintiff alleges she engaged in a protected activity.

45. Plaintiff alleges that after she engaged in, and because she engaged in, protected activity, Farmers subjected Plaintiff to various adverse employment actions, including building a case against her, disciplining her, not listening to her explanation as to the meeting of March 7, 2012, and terminating her employment for making references to the religious faith she and her supervisor shared.

46. Plaintiff alleges there is a causal connection between the protected activity she engaged in and the adverse employment actions that Farmers thereafter took against her.  She alleges several facts, including, but not limited to, the following supports the inference of such a causal connection:

a. Plaintiff alleges her protected activity was followed shortly thereafter by various adverse employment actions;

b. Plaintiff alleges that Farmers management treated her somewhat more favorably before she complained than it treated her after she complained;

c.      Plaintiff alleges that Farmers management treated her differently, disparately and more adversely after she complained compared to how it has treated similarly situated employees who have not complained.

## IV.  DAMAGES

47.      Ms. Rex alleges Farmers's actions and inactions have caused her various losses, injuries and other damages, including damage to her employment record and career, damage to her employability, loss of wages (approximately $8,000 per year) loss of benefits (medical, dental, and life insurance for herself), opportunity to participate in the company's 401 (k), use of a company car and gas card, vacation pay, sick leave, holiday pay, and bonuses.  Plaintiff also alleges Farmers' actions have caused her frustration, worry, fear and other types of emotional distress.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.      Declaring that Farmers discriminated against Ms. Rex on the basis of her religion and retaliated against Ms. Rex on the basis of her protected activity, all in violation of Title VII of the Civil Rights Act;

2.     Awarding Ms. Rex "make whole" relief, including cancellation and expungement of the disciplinary actions, and awarding her the lost wages and benefits she has lost due to the termination of her employment until she secures comparable employment or a period of five years, whichever occurs first;

3.     Awarding Ms. Rex compensatory damages for emotional distress, pain and suffering;

4.     Awarding Ms. Rex her reasonable attorney's fees and costs;

5.     Awarding Ms. Rex such other relief as may be just and equitable.

DATED this 17th day of August, 2015.


   /s/ David J. Holdsworth
David J.  Holdsworth
*Attorney for Plaintiff*

VERIFICATION

April Rex, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing FIRST AMENDED COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.


  /s/ April Rex                                  
April Rex


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of August, 2015.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____